UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

KATHERINE JARVIS
    Plaintiff

-v-

OAKLAND-MACOMB OBSTETRICS
AND GYNECOLOGY, P.C.

AND

JOHN MICALLEF,

    Defendants

Case No. _____

Hon. _____

Shinn Legal, PLC
Jason M. Shinn (P64453)
Attorney for Plaintiff
3080 Orchard Lake Rd., Suite C
Keego Harbor, MI 48320
jshinn@shinnlegal.com
P: 248-850-2290

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, Katherine Jarvis, for her Complaint against Oakland-Macomb Obstetrics and Gynecology, P.C. and Dr. John Micallef states as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1.    Plaintiff Katherine Jarvis was a long time, dedicated employee to Defendant Oakland-Macomb Obstetrics and Gynecology, P.C. (Defendant or "Oakland-Macomb Obstetrics"). For about 15 years, she was employed as a

sonographer for Defendant. She was recognized for her work ethic, positive attitude, and patient care by coworkers, management, and patients.

2. As a frontline, essential worker, Ms. Jarvis risked her health for the benefit of Defendant Oakland-Macomb Obstetrics and its patients. Yet Defendant rewarded her by wrongfully disparaging her and casting her aside after she raised concerns over her employer's deficient response to the COVID-19 Pandemic, for taking protected medical leave, requesting reasonable accommodations for her own health issues, and in relaltion to her reporting on Defendant's response and compliance with COVID-19 related workplace rules, regulations, and law.

3. Plaintiff sues Defendant Oakland-Macomb Obstetrics for wrongful termination and violations of the Families First Coronavirus Response Act (Coronavirus Response Act), the Emergency Paid Sick Leave Act (which is part of the Coronavirus Response Act), the Family Medical Leave Act (FMLA). She also sues Defendant Oakland-Macomb Obstetrics and Defendant John Micallef for related claims under Michigan's Whistleblower Protection Act (WPA), MCL 15.361, *et seq* ., Persons with Disabilities Civil Rights Act, and Intentional Infliction of Emotional Distress.

## THE PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff Katherine Jarvis ("**Ms. Jarvis**") is an individual.  Ms. Jarvis lives in Oakland County, Michigan.

5.     Defendant Oakland-Macomb is, upon information and belief, a Michigan  domestic professional corporation, with its principal place of business in Oakland County, Michigan.

6.     Defendant John Micellef is an individual. Upon information and belief, he resides in the county within this Court's jurisdiction and is an officer, manager, or supervisor of Defendant Oakland-Macomb Obstetrics.

7.     This Court has jurisdiction of this action under 29 U.S.C. § 2617 and 28 U.S.C. §1331.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28. U.S.C. § 1367 because they are so related to the federal claims they form part of the same case controversy.

9.     Venue is proper in this Court under 28 U.S.C. §1391(a) because the claims asserted arose in Oakland County, Michigan and this is also the main place of business of Defendant Oakland-Macomb Obstetrics.

10.     The amount in controversy is greater than $75,000.00, exclusive of costs and interest.

**<u>Factual Statement</u>**

**11.** Plaintiff incorporates by reference and realleges all the preceding allegations.

**12.** Plaintiff was employed by Defendant Oakland-Macomb Obstetrics at its place of business in Oakland County.

**13.** Plaintiff was an "employee" and Oakland-Macomb Obstetrics was her "employer" under the applicable statute or statutes set forth below. She worked as a sonographer for Defendant from about 2006 through November 24, 2020.

**14.** While employed by Defendant Oakland-Macomb Obstetrics, Plaintiff met or exceeded the work performance expectations for Defendant Oakland-Macomb Obstetrics.

### COUNT I AGAINST DEFENDANT OAKLAND-MACOMB OBSTETRICS – VIOLATIONS OF FMLA (INTERFERENCE)

**15.** Plaintiff Katherine Jarvis incorporates by reference and realleges all the preceding allegations.

**16.** Upon information and belief, Defendant Oakland-Macomb Obstetrics employed over 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year and within a 75-mile radius from the location in which Ms. Jarvis worked. Thus, Defendant qualifies as an "employer" under the FMLA (See 29 U.S.C. § 2611(4)).

17.     Also, as a result of the COVID-19 Pandemic, the FMLA was expanded by the Coronavirus Response Act and the Emergency Paid Sick Leave Act, to cover employers with under 50 employees for COVID-19 related purposes. While those provisions expired on December 31, 2020, violations made within the statute of limitations for both the paid sick leave and expanded family and medical leave provisions of the Coronavirus Response Act remains two or three years for willful violations.

18.     Defendant Oakland-Macomb Obstetrics engaged in commerce or in an industry or activity affecting commerce.

19.     Plaintiff was an "eligible employee" under the FMLA. See 29 U.S.C. § 2611(2). This is because she had been employed continuously by Defendant for over a twelve-month period and worked at least 1,250 hours of service in the prior twelve-month period.

20.     The FMLA gives an eligible employee "a total of 12 weeks of leave during any 12-month period for ... a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

21.     An employee who returns to work within the twelve-week statutory period are entitled to return to their previous position or an equivalent position. *Id.*

§ 2614(a)(1) .

22.     An employee entitled to FMLA leave must be restored to his or her former position or an equivalent position upon completion of leave, and "[t]he taking of leave . . . shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Id.* § 2614(a)(1)-(2).

23.     The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the act. The FMLA prohibits an employer from interfering with an employee's exercise of FMLA rights. 29 U.S.C. § 2615(a)(1); *Demyanovich v. Cadon Plating & Coatings*, *L.L.C.*, 747 F.3d 419 , 427 (6th Cir. 2014).

24.     The FMLA also makes "… unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by …" the Act. 29 U.S.C. § 2615(a)(2).

25.     Ms. Jarvis had a right to leave under the FMLA, 29 U.S.C. § 2612(1). This is because she had a condition that qualified for protective leave under the FMLA.

26.     Also, the Coronavirus Response Act and the Paid Sick Leave Act allow for employees to use the protections of the FMLA if the employee requires leave for

"a qualifying need related to a public health emergency" or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

27.     Plaintiff required leave for "a qualifying need related to a public health emergency." Plaintiff took about seven days of leave because she experienced severe migraines caused by Defendant's response to the COVID-19 Pandemic and Defendant's working conditions in that pandemic.

28.     Defendant Oakland-Macomb Obstetrics unnecessarily exacerbated the stress of working in a pandemic, including, but not limited to the following: (i) Having a deficient or non-existent response to the COVID-19 Pandemic; (ii) by rejecting or ignoring Plaintiff's reasonable suggestions to protect against or reduce the risk of COVID-19 transmission; (iii) failing to follow industry best-practices or recommendations of Michigan or federal agencies; (iv) failing to limit the number of people attending a patient's appointment; (v) refusing to modify Plaintiff's schedule in response to her medical condition; and (vi) responding to Plaintiff's concerns by berating or demeaning her and calling her "paranoid." These actions resulted in Plaintiff's need for medical leave, which began around May 29, 2020.

29.     Defendants also advised Plaintiff that Defendant Oakland-Macomb Obstetrics' employees - people that worked with Plaintiff - had tested positive for Covid-19 or experienced COVID-19 symptoms. This also caused Plaintiff more

stress and to experience more migraines, which also required her to take medical leave.

30.     Plaintiff followed Defendants' policy for taking leave, including providing Defendant with notice and explanation for the leave. For example, she notified her supervisor, Lyndie Marcoux, about Plaintiff's need to take medical leave because of her migraines.

31.     Thus, Defendant, through its physician-managers or Plaintiff's supervisor, knew why the leave was taken and why it qualified for protections under the FMLA, Coronavirus Response Act and the Emergency Paid Sick Leave Act.

32.     Plaintiff also took medical leave because of her migraines around November 9, 2020 through November 10, 2020.

33.     Defendant interfered with and denied Plaintiff her rights under the FMLA, Coronavirus Response Act, and the Emergency Paid Sick Leave Act. Such interference and denial included, but was not limited to disparaging her as "paranoid," demeaning her, retaliating against her, deciding to terminate Plaintiff in the time leading up to November 24, 2020, and wrongfully canceling her insurance benefits, all in violation of the FMLA and FMLA related statutes described above.

34.     Defendant's actions were intentional and taken with deliberate disregard for Plaintiff's rights.

**35.** Defendant Oakland-Macomb Obstetrics' interference with Plaintiff's leave has directly and proximately caused Plaintiff significant damages, including loss of reputation, employment advancement, embarrassment, humiliation, outrage, mental distress, and economic loss.

**36.** Defendant Oakland-Macomb Obstetrics' actions and termination of Plaintiff interfered with her attempt to exercise her right of entitlement to leave under the FMLA, under 29 U.S.C. § 2615(a). As such, Defendant Oakland-Macomb Obstetrics violated the FMLA.

Wherefore, Plaintiff is entitled to an award of damages over $75,000.00, including but not limited to back pay, compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest, and other damages as allowed by law and equity.

### COUNT II AGAINST DEFENDANT OAKLAND-MACOMB OBSTETRICS VIOLATIONS OF FMLA (RETALIATION)

**37.** Plaintiff Katherine Jarvis incorporates by reference and realleges all the preceding allegations.

**38.** The FMLA prohibits an employer from retaliating with an employee's exercise of FMLA rights. 29 U.S.C. § 2615(a)(2); *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549 , 555-56 (6th Cir. 2006) (quoting *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238 , 244 (6th Cir. 2004)).

**39.**     Defendant retaliated against Plaintiff for exercising her rights under the FMLA, Coronavirus Response Act, and the Emergency Paid Sick Leave Act. Such retaliation included, but was not limited to disparaging her as "paranoid," demeaning her, and deciding to terminate Plaintiff in the time leading up to November 24, 2020, all in violation of the FMLA and FMLA related statutes described above.

**40.**     There is a causal connection between Plaintiff's protected activity and Defendants retaliatory actions described in the Complaint.

**41.**     Thus, Defendant Oakland-Macomb Obstetrics, in terminating Plaintiff's employment for requesting FMLA, willfully violated the anti-interference provisions of the FMLA, e.g., 29 U.S.C. § 2615.

**42.**     The violations in the preceding paragraph by Defendant Oakland-Macomb Obstetrics make it responsible and liable under the FMLA, 29 U.S.C. § 2617(a).

**43.**     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation, embarrassment, mental anguish, emotional distress, and loss of reputation.

**44.**     As a result, Ms. Jarvis is entitled to recover her damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest,

reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

Wherefore, Plaintiff is entitled to an award of damages over $75,000.00, including but not limited to back pay, compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest, and other damages as allowed by law and equity.

### COUNT III AGAINST DEFENDANTS OAKLAND-MACOMB OBSTETRICS AND MICALLEF – VIOLATIONS OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

45.    Plaintiff Katherine Jarvis incorporates by reference and realleges all the preceding allegations.

46.    At all material times, Plaintiff was an employee, and Defendants Oakland-Macomb Obstetrics and John Micallef were  employers, covered by and under the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201 *et seq.*

47.    Upon information and belief, Defendant Micallef has maintained an ownership interest in Defendant Oakland-Macomb Obstetrics discussed in this Complaint.

48.    Upon information and belief, Defendant Micallef is also a manager for Defendant Oakland-Macomb Obstetrics.

**49.** At all material times, Plaintiff performed her job duties in a manner that was satisfactory or better than expected by Defendant Oakland-Macomb Obstetrics or Defendant Micallef.

**50.** As stated above, Plaintiff experienced debilitating migraine headaches as a result of the stress caused by the COVID-19 Pandemic, unsafe work conditions, and Defendants' inadequate response plan to COVID-19. Plaintiffs' migraines required her to take intermittent leave beginning around May 29. Plaintiff's need for intermittent leave continued through November 10, 2020.

**51.** Plaintiff's migraines and treatment also led to Plaintiff to asking for certain workplace accommodations and restrictions upon returning to work. These workplace accommodations included, but are not limited to, limiting the number people who could attend a patient's appointment, providing personal protection gear or similar equipment, evenly distributing appointments among sonographers to limit exposure to COVID-19, and other reasonable accommodations.

**52.** Plaintiff communicated her condition and need for workplace accommodations beginning in or around May 29, 2020, initially to her supervisor, Lyndia Marcoux, and then other managers or owners of Defendant Oakland-Macomb Obstetrics.

**53.** In the alternative, Defendant Oakland-Macomb Obstetrics and

Defendant Micallef believed Plaintiff was disabled, including when Defendant Micallef called her "paranoid."

54.     Upon information and belief, Defendants also made additional disparaging or conclusionary statements about her mental condition.

55.     Plaintiff's request for time-off and other accommodations described above were reasonable workplace accommodations, consistent with applicable workplace laws or regulations, or both.

56.     Plaintiff also made other suggestions and requests to eliminate or reduce the risks of transmitting COVID-19 within Defendant Oakland-Macomb Obstetrics' workplace, which would have also alleviated or eliminated Plaintiff's stress from contracting COVID-19.

57.     Plaintiff's requested workplace accommodations were refused or ignored by Defendant Oakland-Macomb Obstetrics and Defendant Micallef.

58.     Thereafter, Defendant Oakland-Macomb Obstetrics and Defendant Micallef retaliated against Plaintiff because she asked for the workplace accommodations described here.

59.     Additionally, Defendant Micallef or Defendant Oakland-Macomb Obstetrics refused to engage in any discussion about alternative accommodations or why the requested accommodations were not reasonable.

60.     Upon information and belief, Defendant Oakland-Macomb Obstetrics' policies or practices permit the use of kind or similar accommodations Plaintiff used or requested.

61.     Upon information and belief, guidelines, policies, statutes, or regulations of Michigan and the federal government also require the some or similar kings of accommodations Plaintiff had suggested to be implemented by Defendants.

62.     In November 2020, Defendant Oakland-Macomb Obstetrics decided to terminate Plaintiff.

63.      Upon information and belief, John Micallef was the decision-maker or a decision-maker when it came to terminating Plaintiff.

64.     Defendants told Plaintiff she was terminated on or about November 24, 2020. Defendants' refused to provide Plaintiff a reason for the termination.

65.     Defendant Oakland-Macomb Obstetrics and Defendant Micallef's handling of accommodation issues like those set forth here clarified the arbitrary and capricious manner in which it treats its employees in relation to fulfilling its compliance with Michigan employment law like the PDCRA.

66.     Plaintiff's conditions constitute a disability, as that term is defined under the PDCRA, MCL 37.1103(e).

67.     At the time of her termination, Plaintiff's condition was unrelated to her ability to perform the duties of her job and was unrelated to her qualifications for employment with Defendant Oakland-Macomb Obstetrics.

68.     The actions of Defendant Oakland-Macomb Obstetrics and Defendant Micallef described here constitute discrimination against Plaintiff under the PDCRA.

69.     Plaintiff objected and otherwise opposed Defendant Micallef and Defendant Oakland-Macomb Obstetrics' actions and refusal to accommodate her request for reasonable workplace accommodations. In response, Defendant Micallef and  Defendant Oakland-Macomb Obstetrics retaliated against Plaintiff after she sought to exercise her rights under the PDCRA.

70.     A motivating factor for Plaintiff's termination stemmed from unlawful disability discrimination by Defendant Micallef and Defendant Oakland-Macomb Obstetrics. Specifically, Plaintiff's medical condition, Defendants' perception of her condition, or requested accommodation for the conditions, or a combination of the preceding were a determining factor in their decision to terminate Plaintiff.

71.     The actions of Defendant Micallef and Defendant Oakland-Macomb Obstetrics and its other agents, representatives, and employees were intentional and disregarded the rights Michigan affords to workers like Ms. Jarvis under the PDCRA.

72.     As a direct and proximate result of Defendant Oakland-Macomb Obstetrics' unlawful discrimination, Ms. Jarvis has sustained injuries and damages, including the loss of earnings, and earning capacity; loss of fringe and pension benefits; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to pursue a gainful occupation of choice.

WHEREFORE, Plaintiff Katherine Jarvis asks this Court to enter judgment against Defendants Oakland-Macomb Obstetrics and Defendant Micallef as follows:

a.  Compensatory damages in whatever amount over $25,000 Plaintiff is entitled.

b.  An award of back pay and the value of lost fringe benefits and pension benefits, past, and future.

c.  Exemplary damages in whatever amount over $25,000 Plaintiff is entitled.

d.  An award of interest, costs, and reasonable attorney fees.

e.  Any other relief appears appropriate at the time of final judgment.

### COUNT IV AGAINST DEFENDANT OAKLAND-MACOMB OBSTETRICS – VIOLATIONS OF MICHIGAN'S WHISTLEBLOWER'S PROECTION ACT

73.     Plaintiff Katherine Jarvis incorporates by reference and realleges all the preceding allegations.

**74.**    Ms. Jarvis sues Defendant for violating the Michigan WPA MCL 15.361 et *seq.*

**75.**    Defendant Oakland-Macomb Obstetrics at all material times was an "employer" under the WPA. See MCL 15.361 *et seq.*

**76.**    At all material times, Ms. Jarvis was an employee of Defendant Oakland-Macomb Obstetrics under the WPA. *Id.*

**77.**    Specifically, Ms. Jarvis was "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied" and Defendant Oakland-Macomb Obstetrics compensated Ms. Jarvis for the services he provided under MCL § 15.361(a).

**78.**    Ms. Jarvis raised concerns to Defendant's managers or executives about Defendants' workplace conditions and response to COVID-19, including its failures to follow applicable rules, regulations, statutes, or policies of Michigan or federal government for responding to COVID-19.

**79.**    She began to raise these issues or around April.

**80.**    She also raised these issues right before she was fired on around November 24, 2020.

**81.**    Ms. Jarvis observed Defendant Oakland-Macomb Obstetrics failing to implement workplace policies and procedures called for under Michigan or applicable

federal agencies in responding to COVID-19.

82.     Specifically and as discussed above, many times Plaintiff raised concerns about her employer's refusal to provide or unreasonable delay in providing basic personal protection equipment and related protections. She also raised many concerns about Defendant's Covid-19 response plan and its unnecessary and unreasonable refusal to limit visitors accompanying patients receiving services at Defendant's offices and related mitigation measures.

83.     In response to the preceding observations, Ms. Jarvis investigated the policies and procedures from these governmental agencies for responding to COVID-19, as well as how other similarly situated businesses like Defendant were responding to the COVID-19 Pandemic.

84.     Plaintiff's investigation also included her personally contacting MIOSHA about filing a complaint for the violations by Defendant Oakland-Macomb Obstetrics that she had observed.

85.     Before filing a complaint with MIOSHA, she communicated to Defendant's management about her understanding about Defendant Oakland-Macomb Obstetrics' obligations for complying with applicable law for responding to COVID-19.

86.     However, Defendant Oakland-Macomb Obstetrics declined to take the

required action.

87.     And one manager or officer (John Micellf) even mocked Plaintiff by calling her "paranoid."

88.     Ms. Jarvis, however, made it clear to Defendant and its managers that she would not ignore the issue and she made it clear she would continue to act, including through local or state government or other legal means.

89.     Ms. Jarvis was fired because she reported or because she was about to report a violation or suspected violation of a law, regulation, or rule of the State of Michigan or Federal Government.

90.     Plaintiff was also fired because she opposed Defendant's conduct and practices made illegal by a law, regulation, or rule of the State of Michigan or Federal Government.

91.     Ms. Jarvis's termination was unlawful retaliation by Defendant Oakland-Macomb Obstetrics in violation of Michigan's WPA.

92.     Defendant Oakland-Macomb Obstetrics' actions described above were intentional, wrongful, and unlawful.

93.     As a direct and proximate result of Defendant Oakland-Macomb Obstetrics' unlawful actions against Ms. Jarvis, she sustained injuries and damages, including, but not limited to, loss of earnings; increased housing costs, loss of career

opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

WHEREFORE, Plaintiff Ms. Jarvis requests this Honorable Court enter judgment against Defendant Oakland-Macomb Obstetrics as follows:

**a.**     Compensatory damages in whatever amount she is entitled;

**b.**     Exemplary damages in whatever amount she is entitled;

**c.**     Judgment for lost wages, past, and future, in whatever amount she is entitled;

**d.**     An award for the value of lost fringe and pension benefits, past, and future;

**e.**     An award of costs and attorney fees, which is specifically provided for under MCL 15.364;

**f.**     An award of interest; and

**g.**     Whatever other equitable relief appears appropriate at the time of final judgment.

### COUNT V AGAINST DEFENDANT OAKLAND-MACOMB OBSTETRICS AND MICELLEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**94.**     Ms. Jarvis incorporates by reference and realleges all the preceding allegations.

95.     Defendant Oakland-Macomb Obstetrics' conduct as outlined above was intentional or reckless.

96.     Defendant's conduct as outlined above was extreme, outrageous, and beyond all possible bounds of decency, and of such character as to be intolerable in a civilized society.

97.     Defendant's conduct was not for any proper purpose.

98.     Defendant's conduct caused the severe and serious emotional distress to Ms. Jarvis.

99.     Defendant's conduct, which proximately caused Ms. Jarvis's injuries and damages, was grossly negligent because it showed a substantial lack of concern for Ms. Jarvis's physical and emotional well-being.

100.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff Ms. Jarvis has sustained injuries and damages including, but not limited to,: her health, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

WHEREFORE, Plaintiff Katherine Jarvis prays this Honorable Court grant these remedies against Defendants Micellef and Oakland-Macomb Obstetrics:

**a.**     Award Plaintiff compensatory damages;

**b.**     Award Plaintiff punitive damages;

**c.**     Award Plaintiff reasonable attorney fees, costs, and interest; and

**d.**     Award any other relief this Court deems just and proper.

Respectfully submitted,

**Shinn Legal, PLC**

By:     _/s/Jason M. Shinn_          Dated: February 22, 2021
Attorney for Plaintiff

## JURY DEMAND

Plaintiff Katherine Jarvis asks for a jury trial on all legal claims and prospective

defenses, **except for** those claims based on equity or that intrinsically involve issues

of law properly triable by the judge assigned to this case.

Respectfully submitted,

**Shinn Legal, PLC**

By:     _/s/Jason M. Shinn_          Dated: February 22, 2021

4851-8838-5501, v. 1