UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE JARVIS,

       Plaintiff,                               Civil Action No. 21-CV-10381

vs.                                       HON. BERNARD A. FRIEDMAN

OAKLAND-MACOMB OBSTETRICS AND
GYNECOLOGY, P.C. AND JOHN MICALLEF,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S
AMENDED COMPLAINT OR, ALTERNATIVELY, DISMISS
PLAINTIFF'S AMENDED COMPLAINT IN PART**

This matter is presently before the Court on defendants' motion to strike plaintiff's amended complaint or, alternatively, dismiss plaintiff's amended complaint in part. (ECF No. 32). Plaintiff has responded and defendants have replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall (1) deny the portion of defendants' motion asking the Court to strike plaintiff's amended complaint and (2) grant in part and deny in part the portion of defendants' motion asking the Court to dismiss certain claims raised in plaintiff's amended complaint.

*I. Background*

For approximately fifteen years, plaintiff was employed as a sonographer by defendant Oakland-Macomb Obstetrics and Gynecology, P.C. ("OMOG"). (ECF No. 29, PageID.190, ¶ 1). Defendant John Micallef is the Chief Executive Officer of defendant OMOG. (*Id.*, PageID.191, ¶ 7). Plaintiff states that beginning in March 2020, the Governor of Michigan issued a series of executive orders in response to the COVID-19 pandemic. The orders (1)

declared a state of emergency (EO 2020-4); (2) prohibited certain medical providers from performing non-essential procedures (EO 2020-17); (3) imposed "shelter-in-place" requirements (EO 2020-21, 42, 59, 70, 77); and (4) provided various safeguards to protect workers against the virus (EO 2020-91, 97, 114). (*Id*., PageID.192-94, ¶¶ 19-24). The latter required employers to notify co-workers if an employee reported a positive test result for COVID-19, provide employees with leave or remote work during COVID-19-related quarantine periods, impose a social distancing policy, and supply employees with appropriate protective equipment, among other safety precautions. (*Id*., PageID.193, ¶ 23). Plaintiff adds that EO 2020-97, in particular, imposed "numerous obligations on healthcare providers, including specific waiting-room procedures, limitations on the number of patient appointments, adding special hours for highly vulnerable patients, establishing enhanced telehealth and telemedicine procedures and a preference for remote work." (*Id*., PageID.193-94, ¶ 24). *See* EO 2020-97(9).

On October 2, 2020, the Michigan Supreme Court held that the governor's executive orders were invalid under state law. *In re Certified Questions*, 958 N.W.2d 1, 9-25 (Mich. 2020). The Court stated that the Michigan Emergency Management Act ("EMA") barred the governor from issuing an emergency executive order lasting longer than twenty-eight days without legislative approval. *Id*. at 9-11. The governor thus lacked any authority to "renew her declaration of a state of emergency or state of disaster based on the COVID-19 pandemic after April 30, 2020." *Id*. at 11. The Court further held that the Michigan Emergency Powers of the Governor Act ("EPGA") "constitute[d] an unlawful delegation of legislative power to the executive and [was] therefore unconstitutional" under the Michigan Constitution. *Id*. at 16-24. The Court concluded that the Governor did not "possess the authority to exercise emergency

2

powers under the [EPGA] . . . [and] the executive orders issued . . . in response to the COVID-19 pandemic . . . lack any basis under Michigan law." *Id*. at 6.

On October 22, 2022, the Michigan Legislature enacted the Michigan COVID-19 Employment Rights Act ("CERA"), MICH. COMP. LAWS § 419.401 *et seq*., making the act retroactively applicable beginning March 1, 2020. MICH. COMP. LAWS § 419.410. The CERA prohibits an employer from "discharg[ing], disciplin[ing], or otherwise retaliat[ing] against an employee who . . . [o]pposes a violation of this act [or] [r]eports health violations related to COVID-19." MICH. COMP. LAWS § 419.403(1)(b)-(c). The act requires that employees complete a quarantine period after experiencing COVID-19 symptoms, receiving a positive COVID-19 test result, and/or coming in close contact with an individual who tests positive for COVID-19. MICH. COMP. LAWS § 419.405(1)-(3). As relevant to this case, the act imposes less restrictive requirements on health care professionals. Even if they would otherwise be required to quarantine, it allows health care professionals to "participate in onsite operations when strictly necessary to preserve the function of a facility where cessation of operation of the facility would cause serious harm or danger to public health or safety," as long as they are "not experiencing any symptoms[] and [have] not tested positive for COVID-19." MICH. COMP. LAWS § 419.405(4).

In her amended complaint, plaintiff alleges that beginning in late May 2020, she started "experiencing increased stress related to COVID-19, the requirement that she continue in-person work, and Defendants' failure to institute work rules, practices and protocols in accordance with the Governor's orders." (*Id*., PageID.194, ¶ 26). Defendants' alleged conduct includes refusing to (1) provide plaintiff and her coworkers with "protective shields"; (2) notify

plaintiff and her coworkers about work-related COVID-19 cases; (3) limit sonography/ultrasound appointments to patients only; (4) follow contact tracing protocol; or (5) institute sufficient screening procedures. (*Id.*, PageID.195-97, ¶¶ 30-37, 44, 47-49). Plaintiff alleges that her COVID-19-related stress resulted in "increasingly frequent migraine headaches" from May 2020 through November 2020, as well as elevated anxiety and depression. (*Id.*, PageID.196-97, ¶¶ 40, 53). During this period, plaintiff allegedly communicated with her supervisor, defendant Micallef, and a shareholder of defendant OMOG. She informed them of her concerns regarding defendants' lack of safety precautions, requested additional safety measures, and indicated that she was experiencing "disabling migraine headache[s]" as a result of her COVID-19-related anxiety. (*Id.*, PageID.194-97, ¶¶ 27, 29-30, 41, 54). She also allegedly contacted the Occupational Safety and Health Administration ("OSHA") "to learn the process for filing a complaint," and advised her supervisor that she was considering filing such a complaint. (*Id.*, PageID.195, ¶¶ 38-39).

On November 17, 2020, plaintiff allegedly attended a meeting with defendants, during which she expressed her concerns regarding defendants' COVID-19-related protocols and her exposure to COVID-19 in particular. (*Id.*, PageID.198-99, ¶¶ 57-65). Plaintiff alleges that at this meeting, defendant Micallef was "dismissive of her concerns," "used an angry tone," told her that "she was 'paranoid,'" "advised [her] . . . to immediately cease discussing her dissatisfaction with Defendants' protocols," and "described her as 'impossible to satisfy.'" (*Id.*, PageID.199, ¶¶ 66-70). Plaintiff further alleges that Micallef "created an oral warning for 'unacceptable personal conduct[,]' which allegedly took place at the meeting [on] November 17, 2020[,] and placed the form in [plaintiff's] personal file." (*Id.*, PageID.200, ¶ 71). On

4

November 24, 2020, plaintiff was informed that "Defendants had concluded that the employment relationship was irreparably damaged and that she was terminated." (*Id.*, PageID.200, ¶ 72).

Plaintiff's amended complaint contains seven claims: (1) violation of the Family and Medical Leave Act ("FMLA") (interference) against defendant OMOG, 29 U.S.C. §§ 2612, 2614(a)(1)-(2), 2615(1); (2) violation of the FMLA (discrimination) against defendant OMOG, 29 U.S.C. § 2615(a)(2); (3) violation of Michigan's Persons with Disabilities Civil Rights Act ("PDCRA") against both defendants, MICH. COMP. LAWS § 37.1201; (4) violation of the Michigan Whistleblowers' Protection Act ("WPA") against both defendants, MICH. COMP. LAWS § 15.361 *et seq.*; (5) intentional infliction of emotional distress ("IIED") against both defendants; (6) termination in violation of public policy against both defendants; and (7) violation of the CERA against both defendants. For relief, plaintiff seeks compensatory and punitive damages, costs, and attorney fees.

Plaintiff filed her initial complaint on February 22, 2021. (ECF No. 1). On October 1, 2021, plaintiff's counsel filed an emergency motion to withdraw (ECF No. 18), which the Court granted in an October 6, 2021, order. (ECF No. 25). In that same order, the Court granted plaintiff thirty days to retain substitute counsel and indicated that otherwise she would be required to proceed pro se. (*Id.*). On November 1, 2021, plaintiff's current counsel made an appearance in this case. (ECF No. 27). She then orally moved to file an amended complaint at a November 10, 2021, status conference. The Court granted plaintiff's motion over defendants' objections and the amended complaint was filed on December 1, 2021. (ECF No. 29).

In the instant motion, defendants make two alternative requests: (1) strike the amended complaint, pursuant to Fed. R. Civ. P. 15 and 60, as well as E.D. Mich. LR 7.1(h); or (2) dismiss Counts IV, V, VI, and VII of the amended complaint, or portions of these claims, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 32, PageID.227-28). Plaintiff opposes both aspects of defendants' motion.

## II. Striking Plaintiff's Amended Complaint

Defendants first request that the Court strike plaintiff's amended complaint, pursuant to Fed. R. Civ. P. 15 and 60 and E.D. Mich. LR 7.1(h). Defendants contend that plaintiff's amended complaint is fifty-one paragraphs longer than her original complaint, contains "*more than 60 new paragraphs* of 'FACTS,'" and includes "two additional counts: Count VI against all Defendants for termination in violation of public policy; and Count VII against all defendants for violation of 'the Michigan Employee Rights Act.'" (*Id*., PageID.241) (emphasis in original). Defendants add that the amended complaint "modifies Count II to state a claim for 'FMLA (Discrimination),' in direct contrast to [the original complaint,] which alleged 'FMLA (Retaliation).'" (*Id*., PageID.242). Defendants further argue that plaintiff's amended complaint includes modified or new allegations regarding (1) the number of days on which plaintiff took medical leave; (2) her communications with, and regarding, OSHA; and (3) defendants' violation of various executive orders. (*Id*., PageID.242-43). Defendants contend that "to allow Plaintiff to reinvent the 'facts' ten months after her Complaint was filed with such a drastic amendment that materially revises . . . and contradicts her prior allegations would . . . . compromise the integrity of the litigation process, prejudice Defendants by requiring [them] to expend significant additional resources, and significantly delay resolution of the dispute."

(*Id.*, PageID.246).

In response, plaintiff contends that substitute counsel moved to file an amended complaint because she "recognized [that] the initial complaint did not contain important facts and failed to plead two claims." (ECF No. 35, PageID.319). Plaintiff argues that the factual differences that defendants highlight in their instant motion are "entirely immaterial and mostly not differences at all." (*Id.*, PageID.320). Plaintiff further contends that, pursuant to Rule 15, the Court properly granted her leave to file the amended complaint at the November 2021 status conference. (*Id.*, PageID.320). Moreover, she argues, based on defendants' arguments, neither Fed. R. Civ. P. 60 nor E.D. Mich. LR 7.1(h) provides a basis for the Court to reconsider this ruling. (*Id.*, PageID.321-24).

Pursuant to Fed. R. Civ. P. 15(a)(2), a party may amend its pleading more than twenty-one days after serving it "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Rule 15 reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings, and therefore assumes a liberal policy of permitting amendments." *Langley v. Credit Suisse First Boston Corp.*, 89 F. App'x 938, 943 (6th Cir. 2004) (internal quotation marks omitted). The Supreme Court has stated that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court,

> but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Fed. R. Civ. P. 60(b) sets forth criteria for determining whether relief from a final order is warranted.  It provides six bases for such relief:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   The catchall basis for relief, subsection (b)(6), "applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."  *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007).

This Court's Local Rule 7.1(h)(2) governs motions for reconsideration of non-final orders.  Such motions may be brought only upon the following grounds:

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision; (B) An intervening change in controlling law warrants a different outcome; or (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).

Here, defendants have failed to provide a proper basis for the requested relief.

They cite no mistake, newly discovered evidence, fraud, or intervening change in controlling law that would justify reconsideration of, or relief from, the Court's order; nor do defendants explain why the present circumstances are "exceptional." (ECF No. 36, PageID.352). Rather, defendants essentially argue that the Court abused its discretion in allowing plaintiff to file the amended complaint. The Court disagrees. Even now, defendants fail to provide a satisfactory reason for the denial of plaintiff's motion to amend. There is no evidence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, or undue burden on defendants, nor is there evidence that the amendment is futile. Plaintiff orally moved to file her first amended complaint just nine days after substitute counsel had filed an appearance in this case. Plaintiff argues, and defendants do no deny, that the parties had yet to engage in substantial discovery at that time. Under the circumstances, it was well within the Court's discretion to grant plaintiff's motion to amend. Further, upon granting the motion, the Court stated that it would issue a revised scheduling order so as to allow the parties sufficient time to conduct further discovery, thereby mitigating any prejudice or burden defendants might otherwise bear as a result of the amended filing. For these reasons, the portion of defendants' motion asking the Court to strike plaintiff's amended complaint is denied.

### III. Complete or Partial Dismissal of Counts IV, V, VI, and VII of the Amended Complaint

The remainder of defendants' motion seeks to dismiss in part the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants specifically ask the Court to dismiss Counts IV, V, VI, and VII, or portions thereof, for failure to state a claim upon which relief can be granted. To survive this motion, the challenged portions of the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  Two principles underlie this standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id*. at 678-79 (2009) (internal quotation marks and citations omitted).  The Court shall address each of defendants' requests for dismissal in turn.

### A. Count IV: Violation of the Michigan Whistleblowers' Protection Act

The Supreme Court of Michigan has explained that

> Michigan's Whistleblowers' Protection Act . . . encourage[s] employees to assist in law enforcement and . . . protect[s] those employees who engage in whistleblowing activities.  It does so with an eye toward promoting public health and safety.  The underlying purpose of the act is protection of the public.  The act meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law.

*Dolan v. Cont'l Airlines/Cont'l Exp.*, 563 N.W.2d 23, 26 (Mich. 1997) (internal quotation marks and footnotes omitted).

> To establish a prima facie case under the WPA, a plaintiff need only show that (1) he or she was engaged in protected activity as

> defined by the act, (2) he or she suffered an adverse employment
> action, and (3) a causal connection exists between the protected
> activity and the adverse employment action.

*Whitman v. City of Burton*, 831 N.W.2d 223, 229 (Mich. 2013). "The first prong can be satisfied

. . . either by reporting or by 'being about to report' a suspected violation of law to a public

body." *Smith v. Gentiva Health Servs. (USA) Inc.*, 296 F. Supp. 2d 758, 762 (E.D. Mich. 2003)

(quoting *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998)). As to the

second prong, an "'adverse employment action' is an employment decision that is materially

adverse . . . . Typically, this includes termination, demotion, diminished pay, a less

distinguished title, a material loss of benefits, significantly diminished responsibilities, or other

unique indices." *Jones v. City of Allen Park*, 167 F. App'x 398, 406 (6th Cir. 2006) (quoting

*Heckmann v. Detroit Chief of Police*, 705 N.W.2d 689, 697 (Mich. 2005), internal quotation

marks omitted). "In order to satisfy the third prong of 'causation,' the employer must receive

some form of objective notice of the report or the whistleblower's intent to report before the

retaliatory activity occurs." *Smith*, 296 F. Supp. 2d at 762 (quoting *Kaufman & Payton, P.C.*

*v. Nikkila*, 503 N.W.2d 728, 731 (Mich. 1993)).

Here, plaintiff alleges that in mid-July 2020 she engaged in protected activity

under the WPA when she contacted OSHA and subsequently informed her supervisor that she

had done so and was considering filing a complaint with OSHA. (ECF No. 29, PageID.195, ¶¶

38-39). Plaintiff further alleges that she thereafter suffered adverse employment actions in the

form of increased exposure to COVID-19, discipline, and termination. (*Id*., PageID.209, ¶ 124).

In the instant motion, defendants challenge plaintiff's WPA claim on various

grounds: (1) the COVID-19 executive orders do not provide a private right of action; (2) the

Court lacks subject matter jurisdiction over this claim; and (3) the CERA and/or the COVID-19 executive orders provide the exclusive remedy for any purported violations thereunder.  (ECF No. 32, PageID.256-59).  In response, plaintiff opposes each of these arguments.  (ECF No. 35, PageID.336-40).  She also notes that the CERA expressly "states that it does not impact WPA claims."  (*Id*., PageID.340).

The Court concludes that Count IV of the amended complaint states a plausible claim for relief under the WPA.  Plaintiff engaged in the alleged protected activity in July 2020, four months after the CERA's date of retroactive applicability and three months before the Michigan Supreme Court nullified the governor's executive orders.  Plaintiff cites various violations of the CERA and the then-effective executive orders that she allegedly intended to report to OSHA. She also cites various acts of alleged retaliation on the part of defendants, all of which occurred after plaintiff informed her supervisor of her intention to potentially file an OSHA complaint.  Accepting these allegations as true, plaintiff has plausibly alleged that, as defined by the WPA, (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the two.  Further, as plaintiff notes, the CERA expressly states that it does not "[a]ffect rights, remedies, or protections under the whistleblowers' protection act."  MICH. COMP. LAWS § 419.412(b).  Finally, to the extent that defendants challenge the Court's subject matter jurisdiction over this claim, the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a), as plaintiff's WPA claim "form[s] part of the same case or controversy" as her federal law claims.  For these reasons, the Court shall deny the portion of defendants' motion seeking to dismiss Count IV of plaintiff's amended complaint.

### B. Count V: Intentional Infliction of Emotional Distress

> To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements:  (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.  The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Hayley v. Allstate Ins., Co.*, 686 N.W.2d 273, 276 (Mich. Ct. App. 2004).  "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . .  [Rather,] plaintiffs [are] expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."  *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 909 (Mich. 1985) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d).  *See also Mroz v. Lee*, 5 F.3d 1016, 1019-20 (6th Cir. 1993) (compiling examples of allegations that could be considered "extreme and outrageous conduct" under Michigan law).

As to the degree of emotional distress that must be suffered, the Michigan Supreme Court has explained that liability "applies only where the emotional distress has in fact resulted, and where it is severe. . . .  The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it."  *Roberts*, 374 N.W.2d at 911 (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. j).

In the instant motion, defendants argue that the amended complaint contains "run-of-the-mill employment claims," which do not meet the "high threshold of extreme and outrageous conduct."  (ECF No. 32, PageID.247) (internal quotation marks omitted).  Rather, defendants equate the alleged conduct to "mere insults, indignities, threats, annoyances, petty

oppressions, or trivialities," none of which is sufficient to state a claim for relief under IIED. (*Id*.) (quoting *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)).

In response, plaintiff argues that defendants have inaccurately characterized her allegations. Plaintiff contends that she "was forced, as a condition of employment, to be repeatedly exposed to a deadly virus, including during a time when there was no vaccine," and that when she requested additional precautionary measures from defendants, "she was met with ridicule and called 'paranoid.'" (ECF No. 35, PageID. 324-25). She further notes that defendants "did this[] knowing [plaintiff] suffered from stress[-]induced migraines and anxiety and depression." (*Id*., PageID.325). Plaintiff argues that "[w]hile no published Michigan cases have dealt with COVID-19 issues in the context of an IIED claim, other courts have considered the issue" and have denied Rule 12(b)(6) motions. (*Id*.) (citing *Wessel v. Alexian Bros. Health Sys.*, No. 21 C 3287, 2021 WL 5083750, at *4 (N.D. Ill. Nov. 2, 2021) (concluding that plaintiff's allegations, including workplace exposure to COVID-19 and her employers' COVID-related retaliatory conduct, were "significantly more severe than the 'normal' employer-employee dispute" and that dismissal of her claims would therefore be inappropriate); *Archer v. Carnival Corp. & PLC*, No. 2:20-CV-04203, 2020 WL 9264981, at *6 (C.D. Cal. Sept. 22, 2020) (declining to dismiss plaintiffs' IIED claim, as defendants' refusal to provide "appropriate personal protective equipment" or undertake "other effective measures to prevent the spread of [COVID-19]" could "reasonably be regarded as so extreme and outrageous as to permit recovery")). For these reasons, plaintiff contends, "[a]t the very least, reasonable minds could differ as to whether the alleged behavior is outrageous or extreme and, therefore, the IIED claim should not be struck or dismissed." (*Id*., PageID.326).

14

The Court concludes that Count V of plaintiff's amended complaint states a plausible claim for relief under IIED.  The Sixth Circuit has explained:

> In assessing whether the alleged conduct is sufficiently extreme and outrageous, we are to look to the context of the alleged conduct, to the totality of the circumstances.  In this regard, we may pay particular attention to whether there is an abuse of a relationship which puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest and to whether the defendant preys on knowledge of peculiar susceptibilities of the distressed party.

*Mroz*, 5 F.3d at 1019-20 (internal quotation marks and citations omitted).  Considering the totality of the circumstances alleged here – in particular (1) that the conduct occurred during the early, pre-vaccine months of the COVID-19 pandemic; (2) the fact that this novel virus was highly contagious and causing widespread sickness and death among those who contracted it; (3) defendants' actual authority over plaintiff; and (4) defendants' awareness of plaintiff's stress-induced migraines, anxiety, and depression – the Court concludes that the amended complaint alleges more than a run-of-the-mill employment claim.  Reasonable minds could differ as to whether plaintiff's exposure to a deadly, novel virus and defendants' alleged callousness in response to plaintiff's expressed concerns constituted "extreme and outrageous conduct."  "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."  RESTATEMENT (SECOND) OF TORTS § 46, cmt. h.  For these reasons, the Court will deny the portion of defendants' motion that seeks to dismiss Count V of the amended complaint.

15

### C. Count VI: Termination in Violation of Public Policy

The Supreme Court of Michigan has explained:

In general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason. However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty.

*Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982) (citation omitted). Under Michigan law, "[a] claim [for termination in violation of public policy] is viable only when there is not already a statutory prohibition against the conduct at issue." *Kinch v. Pinnacle Foods Grp., LLC*, 758 Fed. App'x 473, 480 (6th Cir. 2018).

In the instant motion, defendants argue that plaintiff's claim for termination in violation of public policy should be dismissed for various reasons: (1) executive orders are not laws and cannot form the basis of a public policy claim; (2) the COVID-19 executive orders were nullified by the Michigan Supreme Court; (3) the COVID-19 executive orders provided no private right of action; (4) the Court lacks subject matter jurisdiction over this claim; and (5) there already exists an applicable statutory prohibition against discharge in retaliation for the conduct at issue. (ECF No. 32, PageID.244, 249-50, 256-59). Plaintiff opposes each of these arguments in her response brief. (ECF No. 35, PageID.327-29, 336-40).

In a case raising similar questions regarding COVID-19-related workplace precautions and an alleged retaliatory discharge, another judge in this district explained:

In this case, in accordance with *Kinch*, [plaintiff] already has claims under . . . . the Michigan WPA. *Kinch* states that a

16

public policy claim "[i]s viable only when there is not already a statutory prohibition against the conduct at issue." *Kinch*, 758 Fed. App'x at 480. Here, the conduct at issue is being terminated in retaliation for making complaints about health and safety problems and not going along with the office environment that allowed such problems to continue. As a result, the public policy claim is duplicative of the . . . WPA claim[]. And for that reason, [plaintiff's] public policy claim must be dismissed.

Even if [plaintiff's] public policy claim was not duplicative of the WPA claim, she still would not have a viable claim. In *Suchodolski*, the Michigan Supreme Court made clear the kinds of public policy mandates that may constitute a viable claim: *legislatively* enacted policies stating that it is contrary to public policy to terminate employees on the basis of certain protected characteristics. *Suchodolski*, 412 Mich. 692 at 695. Here, [plaintiff] alleges violations of executive-branch regulations—Governor Whitmer's orders and department of health directives. These are not legislative enactments.

*Struckel v. Macomb Cnty.*, No. 20-CV-12995, 2021 WL 4034263, at *14-15 (E.D. Mich. Sept. 3, 2021) (emphasis in original).

In the present case, plaintiff has raised a viable WPA claim and, as explained in further detail below, she has also raised a viable claim under the CERA. The Court concludes that the conduct at issue – being terminated in retaliation for making complaints about health and safety problems and not going along with the office environment that allowed such problems to continue – is fully addressed by plaintiff's WPA and CERA claims, rendering her public policy claim duplicative. Pursuant to *Kinch*, and in line with the Court's ruling in *Struckel*, plaintiff's public policy claim therefore lacks merit. For these reasons, the Court shall dismiss Count VI of the amended complaint.

### D. Count VII: Violation of the Michigan COVID-19 Employment Rights Act

As noted above, the CERA prohibits an employer from "discharg[ing],

17

disciplin[ing], or otherwise retaliat[ing] against an employee who . . . [o]pposes a violation of this act [or] [r]eports health violations related to COVID-19." MICH. COMP. LAWS § 419.403(1)(b)-(c). The CERA requires that employees complete a quarantine period after experiencing COVID-19 symptoms, receiving a positive COVID-19 test result, and/or coming into close contact with an individual who tests positive for COVID-19. MICH. COMP. LAWS § 419.405(1)-(3). The act defines an "employer" as "a person or state or local governmental entity that employs 1 or more individuals." MICH. COMP. LAWS § 419.401(d). The act provides in relevant part that "[a]n employee aggrieved by a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both." MICH. COMP. LAWS § 419.407(1).

In her amended complaint, plaintiff alleges that she "engaged in protected activity under [the CERA] when she opposed Defendants' failure to implement safety protocols, insisted upon compliance with the Governor's COVID-19 Executive Orders and Directives, and otherwise reported violations of the Act to Defendants." (ECF No. 29, PageID.214, ¶ 149). She further alleges that she was terminated "because of the aforementioned protected activity, in violation of MCL 419.401(1)(b) and (c)." (*Id*., PageID.215, ¶ 150).

Defendants argue that plaintiff has failed to include in her amended complaint "any allegation regarding any alleged violation of the [CERA], nor any allegation otherwise claiming that she opposed any specific alleged violation of the Act." (ECF No. 32, PageID.252). Defendants further contend that "the Governor's [executive orders] were nullified more than one month before Plaintiff's discharge." (*Id*.). Defendants argue that plaintiff merely expressed her "dissatisfaction with Defendants' . . . COVID-19 protocols," which does not amount to a protected activity under the CERA. (*Id*.). Therefore, they contend, Count VII should be

18

dismissed in its entirety. (*Id.*). Alternatively, defendants argue that because Micallef does not qualify as an "employer" as defined under the act, "there is no basis for individual liability against [him]" and Count VII should, at least, be dismissed in part. (*Id.*, PageID.252-53).[1]

In response, plaintiff argues that she has alleged various activities protected under the CERA: she (1) "attempted to comply with quarantining rules and opposed Defendants' violation of those rules"; (2) "reported health violations internally"; (3) "attempted to comply with Section 5 [of the CERA] by asking Defendants whether she had been exposed to another anonymous employee who tested positive for COVID-19"; and (4) reported various COVID-19-related health violations to defendants. (ECF No. 35, PageID.331-32). Plaintiff further argues that she made "the gross majority of her complaints *prior* to" the nullification of the COVID-19 executive orders. (*Id.*, PageID.332) (emphasis in original). Moreover, she contends, "alternative sources of public policy were not nullified," such as COVID-19-related guidance issued by the Michigan Department of Health and Human Services and OSHA. (*Id.*). As to Micallef's liability under the CERA, plaintiff argues that he was a decision-maker who exercised control over the terms and conditions of plaintiff's employment and "Defendants cite no authority that there is no individual liability for decision makers under CERA." (*Id.*, PageID.333).

The Court concludes that plaintiff's amended complaint states a plausible claim

---

[1] Defendants further contend that "even assuming Count VII of Plaintiff's Complaint is not stricken or dismissed, Plaintiff's claim for non-economic damages should be dismissed and she should be precluded from recovering the same as to Count VII." (ECF No. 32, PageID.254). The Court finds no basis for this request. The statute broadly allows recovery in the form of "injunctive relief or damages, or both" without differentiating between the economic or non-economic nature of the damages. MICH. COMP. LAWS § 419.407(1). Nothing in the text of the act indicates that plaintiff's recovery should be limited to economic damages only.

for relief under the CERA.  Plaintiff alleges that she expressly opposed defendants' refusal to enforce the CERA's quarantine requirements or inform employees of positive COVID-19 cases and repeatedly reported suspected COVID-19-related health violations internally.  She further alleges that just one week after making one such report, she was terminated.  Accepting these allegations as true, the Court concludes that defendants plausibly violated the CERA and that they are not entitled to dismissal of Count VII.

Regarding Micallef's liability under the CERA, to date no court has interpreted the term "employer" under this statute specifically.  However, Michigan courts have provided useful guidance in other statutory contexts.  The Michigan Court of Appeals has "repeatedly recognized [that] when interpreting the terms 'employ,' 'employer,' or 'employee' in different statutory and factual contexts, the existence of an employment relationship is typically determined by examining a number of factors." *Buckley v. Pro. Plaza Clinic Corp.*, 761 N.W.2d 284, 290 (Mich. Ct. App. 2008).  The appellate court has explained:

> The economic reality test is the most common tool for discerning whether an employee-employer relationship exists. . . . .
>
> This test takes into account the totality of the circumstances around the work performed, with an emphasis on the following factors:
>
>> (1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.
>
> Under this test, no one factor is dispositive; indeed, the list of factors is nonexclusive and a court may consider other factors as each individual case requires.  However, [w]eight should be given to those factors that most favorably effectuate the objectives of the

20

statute in question.

*Id*. at 290-91 (internal quotation marks and footnotes omitted). "Michigan courts have consistently applied the economic reality test in the context of social remedial legislation." *Id.* at 291. Such legislation is defined in relevant part as a law that "provid[es] a means to enforce rights or redress injuries," *id*., and "introduce[s] regulations conducive to the public good." *Nelson v. Assocs. Fin. Servs. Co. of Ind., Inc.*, 659 N.W.2d 635, 641 (Mich. Ct. App. 2002).

The CERA qualifies as "social remedial legislation." The act promotes public health through the enforcement of COVID-19 workplace precautions and provides employees with a means to redress injuries caused by relevant COVID-19-related retaliation. The Court therefore concludes that the CERA does not categorically exclude a chief executive officer, like Micallef, from liability, nor do defendants cite any legal authority that would support their proposed categorical bar. Rather, the CERA's definition of "employer" should be subject to the economic reality test. As described above, under this test the Court must assess various aspects of plaintiff's employee-employer relationship vis-a-vis Micallef, giving weight to those factors that most favorably effectuate the public health objectives of the statute. In her amended complaint, plaintiff alleges that Micallef "exercised control over the decision-making and other terms and conditions of employment," thereby rendering him an "'employer' under CERA." (ECF No. 35, PageID.332-33). Accepting these allegations as true, the Court concludes that plaintiff has stated a plausible CERA claim against Micallef as as her "employer." For these reasons, the Court shall not dismiss Count VII as to either defendant.

### E. Immunity under the COVID-19 Response and Reopening Liability Assurance Act

Defendants next argue that they are immune from liability as to Counts V, VI, and

VII pursuant to the COVID-19 Response and Reopening Liability Assurance Act ("RRLA"), MICH. COMP. LAWS § 691.1451, which was enacted simultaneously with the CERA. (ECF No. 32, PageID.259-60). The RRLA provides a broad grant of immunity "from liability for a COVID-19 claim" for individuals who generally comply with COVID-19-related rules and regulations. MICH. COMP. LAWS § 691.1455. The act states that "[a]n isolated, de minimis deviation from strict compliance with such statutes, rules, regulations, executive orders, and agency orders unrelated to the plaintiff's injuries does not deny a person the immunity provided in this section." *Id*. In relevant part, the act defines a "COVID-19 claim" as "a tort claim or tort cause of action for damages, losses, indemnification, contribution, or other relief arising out of, based on, or in any way related to exposure or potential exposure to COVID-19." MICH. COMP. LAWS § 691.1452.

In the present case, the harm alleged is not plaintiff's exposure to COVID-19. Rather, plaintiff alleges (1) that she was harmed by defendants' general disregard for COVID-19 rules and regulations and (2) that she was unlawfully terminated for complaining about defendants' inadequate COVID-19 workplace precautions. Further, plaintiff's complaint alleges more than an "isolated, de minimis deviation from strict compliance" with COVID-19-related rules and regulations. Because the RRLA does not cover the allegations raised in plaintiff's amended complaint, the Court shall deny defendants' motion to dismiss insofar as the motion seeks dismissal based on immunity.

### F. Plaintiff's Request for Attorney Fees as to Counts V, VI, and VII

Finally, defendants request that the Court "dismiss Plaintiff's claim for attorneys' fees as to [Counts V, VI, and VII], and enter an order precluding Plaintiff from recovering the

same." (ECF No. 21, PageID.255).  Defendants contend that "[t]here is no statute or court rule authorizing the recovery of attorneys' fees for a claim under [the CERA,] for a public policy claim, or for a claim for IIED," and absent such a statute or rule, no attorney fees can be awarded.  (*Id.*) (citing *Male v. Grand Rapids Educ. Ass'n*, 295 N.W.2d 918, 922 (Mich. Ct. App. 1980)).

Fed. R. Civ. P. 12(b)(6), the rule cited by defendants in the instant motion, concerns the dismissal of claims for relief that "fail[] to state a claim upon which relief can be granted."  The Court also possesses authority under Fed. R. Civ. P. 12(f) to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Court may do so on its own or on motion made by a party.  Fed. R. Civ. P. 12(f). Neither of these rules supports defendants' request to strike plaintiff's demand for attorney fees.

"[T]he Sixth Circuit 'has not expressly addressed' whether Rule 12(b)(6) or 12(f) may be used to attack specific requests for relief."  *Zimmerman v. 3M Co.*, 542 F. Supp. 3d 673, 682 (W.D. Mich. 2021) (quoting *Yannotti v. City of Ann Arbor*, No. 19-11189, 2019 WL 5540982, at *4 (E.D. Mich. Oct. 28, 2019)).  However, a judge in this district and a judge in the Western District of Michigan recently addressed this question by looking to Seventh and Ninth Circuit precedent.  These courts concluded that Fed. R. Civ. P. 12(f) "does not authorize a district court to strike a claim for damages because such damages are precluded by law." *Yannotti*, 2019 WL 5540982, at *3 (citing *Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 973-76 (9th Cir. 2010)); *see also Zimmerman*, 542 F. Supp. 3d at 684 (concluding the same). A "request for damages is neither a defense, nor a redundant, immaterial, impertinent, or scandalous matter."  *Yannotti*, 2019 WL 5540982, at *4 (citing *Whittlestone*, 618 F.3d at 973-

76).  There is "even less textual support for such an action under Rule 12(b)(6), which concerns the 'failure to state a *claim* upon which *relief* can be granted.'"  *Zimmerman*, 542 F. Supp. 3d at 684 (emphasis in original).  *See also Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (stating that it would be appropriate to dismiss a claim on the basis of the requested relief only if "the plaintiff wants the improper relief sought in the complaint or nothing" at all).

Here, as explained above, plaintiff has stated plausible claims for relief as to Counts V and VII.  Although her request for attorney fees as to these two claims may be improper under Michigan law, she also seeks permissible relief.  The Court concludes that Rules 12(b)(6) and 12(f) are not appropriate means for challenging the remedies plaintiff seeks.  *See Zimmerman*, 542 F. Supp. 3d at 684.  The portion of defendants' motion asking the Court to dismiss plaintiff's request for attorney fees as to Counts V and VII[2] shall therefore be denied.

### IV. Conclusion

Accordingly,

IT IS ORDERED that the portion of defendants' motion seeking to strike the amended complaint is denied.

IT IS FURTHER ORDERED that the portion of defendants' motion seeking to dismiss Counts IV, V, and VII of the amended complaint, or portions thereof, is denied.

---

[2] Defendants also ask the Court to dismiss plaintiff's request for attorney fees as to Count VI.  As discussed above, the Court shall dismiss Count VI pursuant to *Kinch*, 758 Fed. App'x at 480.

IT IS FURTHER ORDERED that defendants' motion to dismiss as to Counts V and VII of the amended complaint is denied insofar as it is based on an assertion of RRLA immunity.

IT IS FURTHER ORDERED that the portion of defendants' motion seeking to dismiss Count VI of the amended complaint is granted.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated:  April 20, 2022                    SENIOR UNITED STATES DISTRICT JUDGE
        Detroit, Michigan

25