UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE JARVIS,

    Plaintiff,                                  Civil Action No. 21-CV-10381

vs.                                           HON. BERNARD A. FRIEDMAN

OAKLAND-MACOMB OBSTETRICS
AND GYNECOLOGY, P.C., et al.,

    Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION
FOR LIMITED RECONSIDERATION OR, ALTERNATIVELY,
CERTIFICATION TO THE MICHIGAN SUPREME COURT**

This matter is presently before the Court on defendants' motion for partial reconsideration (ECF No. 39) of the Court's April 20, 2022, opinion and order denying defendants' motion to strike plaintiff's amended complaint or to dismiss plaintiff's amended complaint in part. (ECF No. 38). In the alternative, defendants request that the Court certify a narrow issue to the Michigan Supreme Court. Pursuant to E.D. Mich. LR 7.1(h)(3), the Court shall decide this motion without a hearing and without permitting plaintiff to respond. For the following reasons, the Court shall deny the motion.

*I.*    *Background*

This is a COVID-19-related employment discrimination and retaliation case between plaintiff Katherine Jarvis and defendants Oakland-Macomb Obstetrics and Gynecology, P.C. ("OMOG") and John Micallef, her former place of employment and its chief executive officer, respectively. *See Jarvis v. Oakland-Macomb Obstetrics and Gynecology, P.C.*, No. 21-CV-10381, 2022 WL 1177165, at *1 (E.D. Mich. Apr. 20, 2022). Plaintiff alleges that she was

discriminated against and wrongfully discharged for challenging defendants' inadequate COVID-19-related safety precautions. *See id.*, at *1-2. As the Court previously summarized:

> Plaintiff's amended complaint contains seven claims: (1) violation of the Family and Medical Leave Act ("FMLA") (interference) against defendant OMOG, 29 U.S.C. §§ 2612, 2614(a)(1)-(2), 2615(1); (2) violation of the FMLA (discrimination) against defendant OMOG, 29 U.S.C. § 2615(a)(2); (3) violation of Michigan's Persons with Disabilities Civil Rights Act ("PDCRA") against both defendants, MICH. COMP. LAWS § 37.1201; (4) violation of the Michigan Whistleblowers' Protection Act ("WPA") against both defendants, MICH. COMP. LAWS § 15.361 *et seq.*; (5) intentional infliction of emotional distress ("IIED") against both defendants; (6) termination in violation of public policy against both defendants; and (7) violation of the [Michigan COVID-19 Employment Rights Act ("CERA")] against both defendants[, MICH. COMP. LAWS § 419.401 *et seq.*]. For relief, plaintiff seeks compensatory and punitive damages, costs, and attorney fees.

*Id.* at *2.

On December 15, 2021, defendants filed a motion to strike plaintiff's amended complaint or, alternatively, dismiss plaintiff's amended complaint in part, raising various challenges to Counts IV, V, VI, and VII. (ECF No. 32). In its April 20 opinion and order, the Court granted in part and denied in part defendants' motion, allowing the amended complaint to largely proceed intact, but dismissing Count VI pursuant to *Kinch v. Pinnacle Foods Grp., LLC*, 758 Fed. App'x 473, 480 (6th Cir. 2018). *See Jarvis*, 2022 WL 1177165, at *8-9, 12.

Relevant to the instant motion, one of defendants' arguments that the Court rejected in the April 20 opinion and order was their contention that Micallef could not be held liable under the CERA. Defendants argued: "The [CERA] defines employer to mean 'a person or a state or local governmental entity that employs 1 or more individuals.' MCL 419.401(d). The definition of employer does not include an agent. Accordingly, there is no statutory basis

for individual liability against Micallef." (ECF No. 32, PageID.253). This was the entirety of defendants' argument on the issue of individual liability under the CERA. Defendants did not address it in their reply brief.

> In denying this portion of defendants' motion, the Court stated:
>
> Regarding Micallef's liability under the CERA, to date no court has interpreted the term "employer" under this statute specifically. However, Michigan courts have provided useful guidance in other statutory contexts. The Michigan Court of Appeals has "repeatedly recognized [that] when interpreting the terms 'employ,' 'employer,' or 'employee' in different statutory and factual contexts, the existence of an employment relationship is typically determined by examining a number of factors." *Buckley v. Pro. Plaza Clinic Corp.*, 761 N.W.2d 284, 290 (Mich. Ct. App. 2008). The appellate court has explained:
>
>> The economic reality test is the most common tool for discerning whether an employee-employer relationship exists . . . .
>>
>> This test takes into account the totality of the circumstances around the work performed, with an emphasis on the following factors:
>>
>> (1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.
>>
>> Under this test, no one factor is dispositive; indeed, the list of factors is nonexclusive and a court may consider other factors as each individual case requires. However, [w]eight should be given to those factors that most favorably effectuate the objectives of the statute in question.
>
> *Id*. at 290-91 (internal quotation marks and footnotes omitted). "Michigan courts have consistently applied the economic reality test in the context of social remedial legislation." *Id*. at 291. Such

>legislation is defined in relevant part as a law that "provid[es] a means to enforce rights or redress injuries," *id*., and "introduce[s] regulations conducive to the public good." *Nelson v. Assocs. Fin. Servs. Co. of Ind., Inc.*, 659 N.W.2d 635, 641 (Mich. Ct. App. 2002).
>
>The CERA qualifies as "social remedial legislation." The act promotes public health through the enforcement of COVID-19 workplace precautions and provides employees with a means to redress injuries caused by relevant COVID-19-related retaliation. The Court therefore concludes that the CERA does not categorically exclude a chief executive officer, like Micallef, from liability, nor do defendants cite any legal authority that would support their proposed categorical bar. Rather, the CERA's definition of "employer" should be subject to the economic reality test. As described above, under this test the Court must assess various aspects of plaintiff's employee-employer relationship vis-a-vis Micallef, giving weight to those factors that most favorably effectuate the public health objectives of the statute. In her amended complaint, plaintiff alleges that Micallef "exercised control over the decision-making and other terms and conditions of employment," thereby rendering him an "'employer' under CERA." (ECF No. 35, PageID.332-33). Accepting these allegations as true, the Court concludes that plaintiff has stated a plausible CERA claim against Micallef as as her "employer." For these reasons, the Court shall not dismiss Count VII as to either defendant.

*Jarvis*, 2022 WL 1177165, at *10.

## II. Defendants' Motion for Reconsideration or, Alternatively, Certification to the Michigan Supreme Court

In the instant motion, defendants request that the Court reconsider its April 20 ruling as to defendant Micallef's potential liability under the CERA. Defendants again assert that Micallef "is not an 'employer' as defined by the Act, and therefore, there is no statutory basis for individual liability against him." (ECF No. 39, PageID.420). Defendants further contend that the economic reality test, which the Court applied for purposes of defining the term "employer" within the CERA, "does not apply to a determination of whether there is a basis for

4

individual liability under a statute." (*Id.*, PageID.421). Rather, defendants argue, in *Buckley*, the Michigan Court of Appeals applied the economic reality test to resolve an entirely different question – whether the plaintiff was an employee or an independent contractor. (*Id.*, PageID.425). Defendants therefore conclude that the Court's reference to the economic reality test in the April 20 opinion and order was inapposite. Defendants add that "the plain language of the [CERA] makes clear that the legislature did not intend for individual liability when it enacted the [statute]." (*Id.*, PageID.422). Defendants specifically highlight the absence of the term "agent" within the CERA's definition of "employer." (*Id.*, PageID.426). Defendants note that the term "agent" appears in a different employment-related statute, Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), which has been interpreted by the Michigan courts to include individual liability. (*Id.*).

Defendants alternatively request that the Court certify the question of individual liability to the Michigan Supreme Court pursuant to E.D. Mich. LR 83.40 and Mich. Ct. R. 7.308. (*Id.*, PageID.428-29). Defendants state that

> the parties and the Court agree that to date, there is no precedent from Michigan courts interpreting the [CERA] with respect to individual liability. In the absence of direction from the Michigan Supreme Court, the Court should utilize the certification process . . . . Doing so is appropriate not only because the issue is an unsettled area of Michigan law, but because doing so would control the outcome of the issues before the Court in this suit related to Micallef's liability to Plaintiff under the [CERA].

(*Id.*, PageID.430) (emphasis omitted).

### III.    *Legal Standard and Analysis: Motion for Reconsideration*

Local Rule 7.1(h)(2) of the Eastern District of Michigan provides:

Motions for reconsideration of non-final orders are disfavored.

>They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:
>
>>(A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>>
>>(B) An intervening change in controlling law warrants a different outcome; or
>>
>>(C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

"A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected arguments or to introduce new arguments." *Southfield Educ. Ass'n v. Bd. of Southfield Pub. Schs.*, 319 F. Supp. 3d 898, 901 (E.D. Mich. 2018). *See also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Thus, parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued."). "Instead, the moving party must show that the Court made a mistake based on the record before it, and rectifying the mistake would change the outcome." *Southfield Educ. Ass'n*, 319 F. Supp. 3d at 902.

Here, defendants contend that the Court erred in applying the economic reality test to the present case and, but for the application of that test, the Court would not have found a basis for individual liability under the CERA. Defendants also present arguments regarding legislative history and comparative statutory construction that were not included in their original motion or reply brief.

Upon further review, the Court acknowledges that Michigan courts have generally applied the economic reality test to resolve questions regarding a litigant's status as an employee

6

or independent contractor and, relatedly, whether a hiring entity is an employer or contractee. In contrast, here the question is whether the term "employer" covers not only business entities but also the individuals who control them. Although the Court agrees with defendants that the economic reality test may not be the most fitting framework for the present issue, the requested relief – dismissal of Count VII as to defendant Micallef – is nonetheless inappropriate.

The CERA defines "employer" as "a person or a state or local governmental entity that employs 1 or more individual." MICH. COMP. LAWS § 419.401(d). The plain language of the CERA does not limit liability to legal, as opposed to natural, persons. Further, despite defendants' argument to this effect, the Court does not believe that the CERA's legislative history evinces the Michigan legislature's intention to categorically preclude individual liability under the statute. The only evidence that defendants offer in support of this contention is the fact that the CERA's definition of employer does not mirror that of the ELCRA and, most importantly, "***never*** included . . . the term 'agent.'" (ECF No. 39, PageID.428) (emphasis in original). However, Michigan courts have repeatedly stated that remedial statutes, such as the CERA, "should be 'liberally construed in favor of the persons intended to be benefitted.'" *Trepanier v. Nat'l Amusements, Inc.*, 649 N.W.2d 754, 759 (Mich. Ct. App. 2002) (quoting *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 649 (Mich. 1993)). The Court "decline[s] to interpret the [CERA] so as to create a limitation that is not apparent in the unambiguous language of the statute." *Id*.

Moreover, defendants dedicated a mere three sentences to this argument in their motion to strike/dismiss plaintiff's amended complaint, failed to cite any supporting authority, and failed entirely to address it in their reply brief. "[I]ssues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Further, the bulk of the arguments that defendants now rely upon were raised for the first time in their motion for reconsideration. "[A]bsent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited." *United States v. Huntington Nat'l Bank*, 547 F.3d 329, 331-32 (6th Cir. 2009). For these reasons, the Court concludes that the relief requested in defendants' motion for reconsideration is not warranted.

### IV.     *Legal Standard and Analysis: Motion for Certification to the Michigan Supreme Court*

Local Rule 83.40 and Mich. Ct. R. 7.308 provide the process for certifying an issue to the Michigan Supreme Court. Under E.D. Mich. LR 83.40(a), the Court "may certify an issue for decision to the highest Court of the State whose law governs its disposition." The rule further states that the certified issue must be "an unsettled issue of State law," the determination of which "will likely control the outcome of the federal suit," and that "certification of the issue [must] not cause undue delay or prejudice." E.D. Mich. LR 83.40(a)(1)-(3). Under Mich. Ct. R. 7.308(A)(2)(a), "[w]hen a federal court . . . considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Court."

The Sixth Circuit has stated that "[t]he decision whether or not to utilize a certification procedure lies within the sound discretion of the district court. Resort to the

8

certification procedure is most appropriate when the question is new and state law is unsettled." *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). "However, . . . certification is disfavored when it is sought only after the district court has entered an adverse judgment." *State Auto Prop. and Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015). "[T]he appropriate time for a party to seek certification of a state-law issue is before, not after, the district court has resolved the issue." *Id*. Moreover, "federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009).

In the present case, defendants' request for certification should have been made, if at all, before the Court issued its April 20 opinion and order. Instead, defendants waited until after an adverse opinion was entered in an apparent attempt to obtain a more favorable, second opinion from the state courts. Further, although the question of individual liability under the CERA is an issue of first impression, the Court believes there is a reasonably clear and principled course for it to follow. In accordance with the guiding principle regarding remedial statutes, and the lack of any convincing evidence that the Michigan legislature intended to absolve company decision-makers of liability, the Court shall liberally construe the CERA in favor of the person intended to be benefitted. Plaintiff may proceed with Count VII as to both defendants. Finally, there is no need to trouble the Michigan Supreme Court with an issue that received so little attention in defendants' original briefing. The Court shall therefore deny the portion of defendants' motion that requests certification.

V.    *Conclusion*

Accordingly,

IT IS ORDERED that defendants' motion for reconsideration or, alternatively, certification to the Michigan Supreme Court (ECF No. 39) is denied.

                                                s/Bernard A. Friedman
                                                BERNARD A. FRIEDMAN
Dated: May 20, 2022               SENIOR UNITED STATES DISTRICT JUDGE
       Detroit, Michigan